## J. H. McFarlane et al v. Ross O. Whitney et al.

No. 7307. Decided January 3, 1940.
Rehearing overruled February 14, 1940.
(134 S. W., 2d Series, 1047.)

*E. D. Smith,* of Crane, *R. J. Channell,* of El Paso, and *W. H. Penix,* of Mineral Wells, for plaintiffs in error.

Under the facts and circumstances and the findings of the trial court the notices were posted at three several places in the county as required by Article 3810, R. S. 1925. Morris v. Hastings, 7 S. W. 649; Smith v. Bittick, 237 S. W. 331; Scott v. McGlothlin, 30 S. W. (2d) 511, 517.

*Scarborough & Ely, Edmund C. Yates* and *Walter Ely,* all of Abilene and *J. A. Moore,* of Odessa, for defendants in error.

Article 3810 of the R. S. 1925, requiring the posting of notices of sale under a deed of trust to be made in three several places in the county is mandatory and posting said notices so close together as to amount to one place does not comply with the conditions of the deed of trust or the law. Neither does the sale of property under a deed of trust which provides that it be made between the hours of 10 A. M. and 4 P. M. solar time comply with the law when it is sold before 10 A. M. solar time. Willie v. Hays, 207 S. W. 427; Chamberlain v. Trammell, 61 Texas Civ. App., 650, 131 S. W. 227; Holmes v. Klein, 59 S. W. (2d) 172; Texas Tram & Lbr. Co. v. Hightower, 100 Texas 126, 96 S. W. 1071.

*Orgain, Carroll & Bell,* of Beaumont, and *Hal S. Lattimore,* of Fort Worth, filed briefs as amici curiae.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

Defendants in error R. S. Pershing and F. O. Pershing contest on two grounds the validity of a public sale of land made by a trustee under power of sale given in a deed of trust. The sale is attacked, first, on the ground that notices of the sale were not posted at three public places as required by statute, the contention being that the posting was not in compliance with the statute because all three notices were posted in the unincorporated town of Crane, the county seat, so close together as to amount to a posting in the same place. The second ground of attack is that the sale was not made between the hours of 10 o'clock A. M. and 4 o'clock P. M. as required by statute, because according to solar or true sun time the property was sold before 10 o'clock A. M. The sale was made at 10:15 A. M., central standard time.

The suit was filed by plaintiffs in error J. H. McFarlane and R. C. Wyche, who claim under the trustee's sale, against R. S. Pershing, F. O. Pershing and Ross O. Whitney for the title and possession of three surveys of land in Crane County aggregating 1704.8 acres. It seems that Ross O. Whitney neither had nor claimed any interest in the land, as the judgment rendered by the district court recites his discharge with his costs on disclaimer. Defendants in error R. S. Pershing and F. O. Pershing filed a cross action for the title and possession of the land, specially pleading that on and prior to September 1, 1922, they owned the land in fee simple, title being in the name of R. S. Pershing, that on said date R. F. Pershing executed a deed of trust conveying the land to Charles Wyche, trustee, to secure the payment of a note executed by R. S. Pershing to Miriam C. Wyche in the sum of $2500.00, that on April 7, 1931, a substitute trustee undertook to sell the land publicly for the satisfaction of the said debt and that the attempted sale was void for three reasons: (1) because notices of the sale had not been posted as required by law; (2d) because the sale was not made between the hours of 10 o'clock A. M. and 4 P. M.; and (3) because at the time the attempted sale was made usurious interest had been collected by the owner of the note in a total sum sufficient to pay the principal of the debt in full.

The district court, after trial without a jury, rendered judgment that plaintiffs in error take nothing by their suit and that defendants in error R. S. Pershing and F. O. Pershing have judgment against plaintiffs in error for the title and possession of the land except 213 acres of royalty described in a deed, identified by reference to the records, from Ross O.

Whitney, trustee, to Miriam C. Wyche, which royalty interest was adjudged to plaintiff in error R. C. Wyche.

The trial court found in substance that no usurious interest was either contracted for or paid. The correctness of the finding has not been challenged by defendants in error either in the Court of Civil Appeals or in this court. After setting out fully the facts as to the execution of the note and deed of trust, certain extension of the debt, the trustee's sale, the places where the notices were posted and the time of the sale, the trial court concluded that the trustee's sale was not void on account of having been made before 10 o'clock by sun time, but that the sale was void because the posting of the three notices all in the town of Crane was not in compliance with the deed of trust and not in compliance with the law. The Court of Civil Appeals affirmed the trial court's judgment, holding that two of the notices were posted in such close proximity to the one at the courthouse door that a proper posting of the notices was not made as contemplated by the statute and the terms of the deed of trust. 106 S. W. (2d) 406.

We consider first the question as to the posting of the notices. The deed of trust, which was executed September 1, 1922, provides that before making sale of the property the trustee shall give "notice of the time, terms and place of sale and of the property to be sold, as now required by statute in sales of real estate under deeds of trust." It authorizes the trustee after selling the property to execute to the purchaser a good and sufficient deed to the property sold. The last paragraph in the deed of trust is as follows: "It is further provided that the recitals in the conveyance to the purchaser shall be full evidence of the matters therein stated, and all the prerequisites to said sale shall be deemed to have been performed." The trustee's deed made after the sale to Miriam C. Wyche contains among other recitals the statement that the sale was made "after having given public notice of the time, place and terms of such sale as required by law and by the terms of said deed of trust."

The statute regulating the manner of making sales of real estate under deeds of trust that was in effect when the deed of trust was executed is Chapter 15, Acts First Called Session, 34th Legislature (1915). It provides that notice of such sale shall be given "by posting written notice thereof for three consecutive weeks prior to the day of sale in three public places in said county or counties, one of which shall be at the courthouse door of the county in which such sale is to be made,

and if such real estate be in more than one county, one at the courthouse door of each county in which said real estate is situated, or such notice may be given as required by statute in case of judicial sale, or such notice may be given in either of said methods, or as may be provided for in said deed of trust or contract lien." The sale was made April 7, 1931, at which time Article 3810 of the Revised Civil Statutes of 1925 was in effect. The codifiers made changes in the act of 1915 above referred to in bringing it into the Revised Statutes, but such changes are not material here. The statute in effect when the deed of trust was executed and the statute in effect when the trustee's sale was made both authorized the trustee to give notice of the sale by posting written notice thereof for three consecutive weeks in three public places in the county, one of which should be at the courthouse door.

The facts bearing upon the question whether the notices were posted in three public places are, according to the findings of the trial court and the undisputed evidence, as follows: One of the notices was posted at the door of the courthouse in the town of Crane, the county seat. Another notice was posted at the "Humble Filling Station," an oil and gasoline service station which was about 400 feet east from the courthouse door. This service station was in the town of Crane and was on the main public highway of the county, which was a paved highway running north and south through the county and the only state highway in the county and the only road in the county that had been legally laid out. There were other roads over which the public traveled. The third notice was posted at the post office, which was about 1200 feet northeast from the courthouse door and was also in the town of Crane and on said main public highway but farther north than the Humble Company's service station and on the other side of the street. The courthouse was not on the main highway.

There was no other town in the county and there was in the county outside of the town of Crane no school house, church or public building where people generally gathered for public purposes. There were situated in the county within a radius of five miles of the town of Crane seven or eight oil camps or communities maintained by oil companies for their employees, superintendents and officials. The largest of these, that of Gulf Oil Company, was two or three miles southeast of the town of Crane. About 200 people lived in that camp. It was connected with the town of Crane by road and in it a store

was operated. These camps were situated on property owned by the oil companies that maintained them.

Crane County was organized in 1927. The town of Crane was incorporated in 1933. According to the 1930 census the population of the county was 2194 and 1000 of those who resided in the county lived in the town of Crane. All but 25 or 30 of the inhabitants of the county lived within a radius of five miles of the town.

From the recitals in the deed of trust and the trustee's deed, above quoted, the presumption arises that public notice of the sale was given as required by law and by the terms of the deed of trust. Adams v. Zellner, 107 Texas 653, 183 S. W. 1143. The facts in evidence, which have been stated, with respect to the places where the notices were posted, in our opinion not only do not overcome the presumption but conclusively prove compliance with the statute and with the provisions of the deed of trust.

The requirement is merely that the notices be posted in three public places in the county, one of which shall be at the courthouse door. Thus the courthouse door is designated by the statute as one of the three public places and it is left to the trustee to select two other public places in the county. The statute does not provide that the other two public places selected shall not be in the town or city that is the county seat, and it does not prohibit the posting of two or of all three of the notices in the same city or town. We are not authorized to read such provision into the statute.

Nor can it be said that under the facts of this case the posting of all three notices in the town of Crane did not give due publicity to the sale. There was no other town than Crane in the sparsely settled county and there was outside of the town of Crane no schoolhouse, church or other public building. All of the inhabitants of the county except 25 or 30 lived within a radius of five miles of the town. The post office and the Humble Company's service station were in the town and on the main public highway of the county, the only designated state highway in the county, the post office being on one side of the highway and the service station on the other. These were public places.

■ Were the places where the notices were posted separate and distinct places or were they, or two of them, so close together as to be in effect only one place or only two places? The service station was 400 feet from the courthouse door, more than the length of one of the blocks of the town, and on a

different street from that on which the courthouse was situated. The evidence is that the service station was on the state highway running through the town and that the courthouse was not. The post office was 1200 feet, more than three blocks, northeast of the courthouse door and was also on the state highway but about two blocks, 600 feet or more, north of the Humble service station and on the opposite side of the highway. It is evident that the three places were far enough removed, the one from the other, to be separate and distinct places and that there was no such relation between any two of the three places in location, ownership or use, as to make them in effect one place. They were three public places in the county within the meaning of the act of 1915 and Article 3810. Graham v. Fitts, 53 Miss. 307.

Three decisions are cited by the Court of Civil Appeals in support of its conclusion that the places of posting were not three different public places as contemplated by the statute. They are National Loan & Investment Company v. Dorenblaser, 30 Texas Civ. App., 148, 69 S. W. 1019 (application for writ of error refused), Phipps v. Fuqua, 32 S. W. (2d) 660, (application for writ of error refused) and Holmes v. Klein, 59 S. W. (2d) 171. The case last cited is not in point. The sale was of personal property. To such sale Article 3810 has no application, and the opinion does not disclose what method of giving notice was prescribed by the chattel mortgage.

In the Dorenblaser case one notice was posted at the courthouse door in the town of Hillsboro, one on a telephone post on the northeast corner of the public square in which the courthouse was situated, and the other on a telephone post on the northwest corner of the said square. It was held that the posting of the notices was practically at one place and not at three public places. Neither the opinion of the Court of Civil Appeals nor the application for writ of error discloses the size of the public square or the distance between the places where the notices were posted. The decision seems to rest upon the fact that the notices were not posted in three separate places, but were all in effect in one place, at the courthouse. As has been shown, such state of facts does not exist in the instant case. The opinion in that case treats the manner of posting the notices as an irregularity sufficient, in connection with gross inadequacy of the price for which the property was sold, to set aside the sale. There is no evidence of inadequacy of price in the sale in the instant case.

In Phipps v. Fuqua, supra, the notices of sale of land in Deaf Smith County were posted, as shown by the recital in the trustee's deed, one at the courthouse door, "one at Cross Section Harrison Highway and 25 Mile Avenue, and one on telephone post on east Third Street in Hereford, north of the First National Bank Building." This recital is the only evidence in the statement of facts in that case with reference to the places where the notices were posted. It seems, therefore, to have been held by the Court of Civil Appeals in the Phipps-Fuqua case that the posting of two of the notices in one town constitutes of itself, and without reference to any other facts, a failure to comply with the requirement of the statute that the notices be posted in three public places. It is our opinion that such decision is unsound for the reasons hereinbefore stated.

██ The second ground of the attack made by defendants in error upon the trustee's sale is that it was not made between the hours of 10 A. M. and 4 P. M. as required by the deed of trust and by Article 3810, because according to solar or true sun time, but not according to central standard time, the sale was made before 10 o'clock A. M. Defendants in error in support of this contention rely upon three decisions of the courts of this State, the latest of which was made in 1916. In the first two of such cases, Ex Parte Parker, 35 Texas Crim. Rep. 12, 29 S. W. 480, 790, and Texas Tram & Lumber Company v. Hightower, 100 Texas 126, 96 S. W. 1071, 6 L. R. A. (N. S.) 1046, 123 Am. St. Rep. 794, it was held that in determining the time of the expiration of a term of court limited by statute to a certain day, solar time and not standard or railroad time should be used. The Court of Civil Appeals in Walker v. Terrell, 189 S. W. 75, (application for writ of error refused) applied the same standard of time in deciding whether a saloon was kept open after 9:30 P. M. in violation of what was known as the 9:30 closing law. It may be observed that the two decisions of the Texas courts last cited were when made contrary to the decisions in a number of the other states, the courts of which, on account of the general use of standard time, recognized standard time rather than solar time as the criterion in determining questions dependent upon time. Rochester German Insurance Company v. Peaslee Gaulbert Company, 120 Ky. 752, 87 S. W. 1115, 89 S. W. 3, 1 L. R. A. (N. S.) 364, 9 Ann. Cas. 324; Salt Lake City v. Robinson, 39 Utah 260, 116 Pac. 442, 35 L. R. A. (N. S.) 610 and note, Ann. Cas. 1913E 61; 29 R. C. L. pp. 727-730, Sections 1-3, 62 C. J. pp. 960-962, Section 3-6, Note 6 L. R. A. (N. S.) 1046.

The Supreme Court, in Texas Tram & Lumber Company v. Hightower (supra) followed solar or true sun time in preference to "railroad time," which was the standard time adopted, for the sake of uniformity, in 1883 by the railroads of the United States. The use of that standard or railroad time soon became general and in the more populous communities of the nation almost exclusive. Standard time, however, as now known and used, is that which was established as the standard time for the United States by the Act of Congress of March 19, 1918 (15 U. S. C. A., Sections 261-265). By that act provision was made for dividing the territory of the United States into five zones and a standard time for each zone was fixed, based on the mean astronomical time of a specified degree of longitude. Texas has been placed in the second zone, the standard time of which zone is designated by the act as United States standard central time.

■ It has been held that this act of Congress makes the standard of time "applicable only (1) to the movement of common carriers engaged in interstate and foreign commerce; (2) to its own officials and departments; and (3) to all acts done by any persons under Federal statutes, orders, rules and regulations." Massachusetts State Grange v. Benton (U. S. D. C.) 10 Fed. (2d) 515, 516; Id. 272 U. S. 525, 47 Sup. Ct. 189, 71 L. Ed. 387. But even though the act does not by its terms provide a standard of time for all persons subject to the jurisdiction of the United States, such has been its practical effect. Very soon after the act went into effect the standard of time established by and under it was adopted and came into general use by the people throughout the United States. Such fixed single standard was found to be not only beneficial but necessary in the operation of railroad trains and other means of transportation and in conducting business, governmental and private, and social affairs. These facts are so generally known that the courts may and should take judicial knowledge of them. Reynolds v. McMan Oil & Gas Company (Com. App.) 11 S. W. (2d) 778, 784; Salt Lake City v. Robinson, 39 Utah 260, 116 Pac. 442, 35 L. R. A. (N. S.) 610, 617; 20 American Jurisprudence, pp. 49-50, Sec. 18. The court judicially knows that in 1931 when the trustee's sale was made central standard time was the time generally used in Crane County. The undisputed evidence establishes the same fact. The court also knows judicially that central standard time was the time generally used in that county in 1922 when the deed of trust was executed and that the same standard of time was in general use in Texas when the Revised Civil Statutes of 1925 containing Article 3810 were

enacted. We conclude that the trustee's sale made on April 7, 1931, before the courthouse of Crane County between the hours of 10 A. M. and 4 P. M. according to central standard time, was made within the time intended by the parties to the deed of trust and within the time intended by the statute.

The conclusion that the trustee's sale was valid makes unnecessary the determination of other questions presented by the application for writ of error and in the briefs. The case having been fully developed, the judgment that should have been rendered by the trial court is here rendered. The judgments of the district court and the Court of Civil Appeals are reversed and judgment is rendered in favor of plaintiffs in error against defendants in error R. S. Pershing and F. O. Pershing for the title and possession of the land described in the second amended petition of plaintiffs in the trial court, vesting in plaintiffs in error title to the interests in said land owned by them respectively as set out in said petition, that said defendants in error take nothing by their cross action, that plaintiffs in error take nothing by their suit for damages, and that Ross O. Whitney, defendant in the trial court, be discharged with his costs on his disclaimer.

Opinion adopted by the Supreme Court January 3, 1940.

Rehearing overruled February 14, 1940.