USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 95-1780 PAN AMERICAN GRAIN MFG. CO., INC., Petitioner, v. UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.  ____________________ ON PETITION FOR REVIEW OF AN ORDER OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY  ____________________ Before Cyr, Circuit Judge, _____________ Coffin and Bownes, Senior Circuit Judges. _____________________  ____________________ Romano A. Zampierollo-Rheinfeldt for petitioner. ________________________________ Banumathi Rangarajan, Trial Attorney, U.S. Department of Justice, ____________________ Environmental Defense Section, with whom Lois J. Schiffer, Assistant ________________ Attorney General, Joseph A. Siegel, Assistant Regional Counsel, U.S. ________________ Environmental Protection Agency, and Michael Prosper, Office of _______________ General Counsel, U.S. Environmental Protection Agency, were on brief for respondent.  ____________________ September 6, 1996  ____________________ CYR, Circuit Judge. Petitioner Pan American Grain CYR, Circuit Judge _____________ Manufacturing Company, Inc. presents two claims on appeal. First, it challenges the United States Environmental Protection Agency's ("EPA") November 1991 designation of the Municipality of Guaynabo, Puerto Rico ("Guaynabo"), as a nonattainment area under the National Ambient Air Quality Standards ("NAAQS") promulgated by the EPA pursuant to the Clean Air Act, 42 U.S.C. 7401-7671 ("CAA"). Second, petitioner contests the EPA's May 1995 approval of a revised State Implementation Plan ("SIP") issued by the Commonwealth of Puerto Rico, which banned further use of clam- shell devices in grain removal operations to ensure attainment of the NAAQS PM10 standard prescribed for Guaynabo. We conclude that the first claim is time-barred and reject the second claim on the merits.  BACKGROUND BACKGROUND __________ The CAA was enacted "to protect and enhance the Nation's air quality, to initiate and accelerate a national program of research and development designed to control air pollution, to provide technical and financial assistance to the States in the execution of pollution control programs, and to encourage the development of regional pollution control pro- grams." Conservation Law Found., Inc. v. Busey, 79 F.3d 1250, _______________________________ _____ 1256 (1st Cir. 1996) (citing 42 U.S.C. 7401(b) (1988)). In furtherance of these objectives, the EPA promulgated NAAQS, which prescribe, inter alia, maximum allowable concentration levels of _____ ____ fine particulate matter with an aerodynamic diameter not greater 2 than a nominal ten micrometers ("PM10"). See 42 U.S.C.  ___ 7409(a); see also id. 7407(d)(4)(B). The CAA requires States ___ ____ ___ to develop and maintain implementation plans for achieving compliance with the NAAQS. See id. 7410(a). Accordingly, each ___ ___ State, as well as the Commonwealth of Puerto Rico ("Common- wealth"), is required to submit for EPA approval a SIP which specifies the manner in which compliance with NAAQS is to be achieved. See id. 7407; American Auto. Mfr. Ass'n. v. Commis- ___ ___ __________________________ _______ sioner, Mass. Dept. of Environmental Protection, 31 F.3d 18, 21 ________________________________________________ (1st Cir. 1994); Sierra Club v. Larson, 2 F.3d 462, 464 (1st Cir. ___________ ______ 1993). A region that has not attained compliance with NAAQS is designated a "nonattainment" area, see 42 U.S.C. 7407(d)(1)(A), ___ which imposes upon the State the obligation to include more stringent provisions in its SIP. See id. 7513. ___ ___ Under the 1990 amendments to the CAA, by operation of law, Guaynabo became a designated nonattainment area for PM10, based upon NAAQS violations which had occurred prior to January 1, 1989. See id. 7407(d)(4)(B), 7513(a); 56 Fed. Reg. 11,105. ___ ___ Accordingly, on March 15, 1991, the EPA published notice in the Federal Register announcing its initial designation of Guaynabo _______ ________ as a "moderate" nonattainment area for PM10. See 42 U.S.C.  ___ 7502(a)(1) (permitting EPA to "classify" nonattainment areas). On November 6, 1991, the EPA issued a final rule codifying its PM10 nonattainment designation for Guaynabo. See id.  ___ __ 7407(d)(2); 56 Fed. Reg. 56,694.  Thereafter, the Puerto Rico Environmental Quality Board 3 ("EQB") conducted a public hearing and received comments on a proposed SIP revision which would achieve PM10 compliance in Guaynabo. On November 14, 1993, the EQB submitted its SIP revision to the EPA; in March of 1994, it supplemented the revised SIP. On August 11, 1994, the EPA published for comment its proposed full approval of the SIP revision. See 59 Fed. Reg. ___ 41,265. On May 31, 1995, after conducting public meetings and evaluating the comments received, including those submitted by petitioner, the EPA approved the revised SIP and published notice of its approval and promulgation. See 60 Fed. Reg. 28,333. The ___ instant petition for review was filed on July 28, 1995. DISCUSSION DISCUSSION __________ A petition to review a final EPA action must be filed in the appropriate court of appeals within sixty days after notice of the action appears in the Federal Register. See 42 _______ ________ ___ U.S.C. 7607(b)(1); e.g., Harrison v. PPG Indus., Inc., 446 U.S. ____ ________ ________________ 578, 588-92 (1980). Appellate review is governed by the Adminis- trative Procedure Act ("APA"), 5 U.S.C. 706(2)(A), and substan- tial deference is accorded final agency actions, which will not be set aside unless "`arbitrary, capricious, an abuse of discre- tion, or otherwise not in accordance with the law.'" Citizen's _________ Awareness Network, Inc. v. United States Nuclear Reg. Comm'n, 59 _______________________ _________________________________ F.3d 284, 290 (1st Cir. 1995) (citations omitted); Puerto Rico ___________ Sun Oil Co. v. EPA, 8 F.3d 73, 77 (1st Cir. 1993). The deference ___________ ___ due "is magnified when the agency interprets its own regula- tions." Puerto Rico Aqueduct & Sewer Auth., EPA, 35 F.3d 600, ___________________________________ ___ 4 604 (1st Cir. 1994) (citing Arkansas v. Oklahoma, 503 U.S. 91, ________ ________ 111-12 (1992)).  We inquire whether the challenged EPA action was based on the wrong factors or whether there has been a clear error in judgment. Citizens to Preserve Overton Park v. Volpe, 401 U.S. __________________________________ _____ 402, 416 (1971). Although searching and careful, review under the `arbitrary and capricious' standard is narrow in scope. See ___ Adams v. EPA, 38 F.3d 43, 49 (1st Cir. 1994). Moreover, we are _____ ___ not empowered to substitute our judgment for that of the agency. See id.; Caribbean Petroleum Corp. v. EPA, 28 F.3d 232, 234 (1st ___ ___ __________________________ ___ Cir. 1994) (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. __________________________ ________________ Auto Ins. Co., 463 U.S. 29, 43 (1983)).  _____________ I I Petitioner's challenge to the EPA's 1991 designation of Guaynabo as a PM10 nonattainment area is time-barred, see 42 ___ U.S.C. 7607(b)(1) (prescribing 60-day period), since the petition for review was filed in July 1995, three and one-half years after the designation. Consequently, we lack appellate jurisdiction. Petitioner attempts to circumvent the time-bar by claiming that the 1991 PM10 nonattainment designation did not constitute "final agency action" for purposes of judicial review under 42 U.S.C. 7607(b)(1), but became final in May 1995 when the EPA approved the revised SIP issued by the Commonwealth. Petitioner's interpretation lacks supporting authority and conflicts with the plain language of the statute. In its 1990 amendments to the CAA, Congress directed 5 the EPA to publish notice in the Federal Register announcing non- _______ ________ attainment designations under 42 U.S.C. 7407(d)(4)(B). See id. ___ __ 7407(d)(2)(A). On November 6, 1991, the EPA published its PM10 nonattainment designation for Guaynabo, thereby constituting its designation a final EPA action in accordance with its terms: __ __________ ____ ___ _____ "today's codification of the initial designations for PM10 in 40 CFR part 81 represents final agency action for the purpose of _____ ______ ______ section 307(b) of the CAA [42 U.S.C. 7607(b)(1).]" 56 Fed. Reg. 56,706 (emphasis added). Cases in other circuits likewise indicate that such nonattainment designations constitute final agency action. See Dressman v. Costle, 759 F.2d 548, 553 (6th ___ ________ ______ Cir. 1985); City of Seabrook v. EPA, 659 F.2d 1349, 1370 (5th _________________ ___ Cir. 1981) ("We think that the designations [as NAAQs' nonattainment areas] were `final actions' subject to immediate, direct review under [42 U.S.C. 7607(b)(1)] when they were promulgated."), cert. denied, 459 U.S. 822 (1982); United States _____ ______ _____________ Steel Corp. v. EPA, 595 F.2d 207, 211, clarified, 598 F.2d 915 ___________ ___ _________ (5th Cir. 1979). See also United States Steel Corp. v. EPA, 605 ___ ____ _________________________ ___ F.2d 283, 290 (7th Cir. 1979) (assuming, without discussion, that designations [of NAAQS nonattainment areas] were open to immedi- ate judicial review), cert. denied, 445 U.S. 939 (1980). We _____ ______ believe this to be both a permissible construction of the stat- ute, see Chevron, U.S.A., Inc. v. Natural Resources Defense ___ ______________________ __________________________ Council, Inc., 467 U.S. 837, 843 (1984), and, from an adminis- ______________ trative efficiency perspective, entirely rational. As the required SIP revision process itself is protracted, it is not 6 irrational to conclude that Congress did not intend that it be further extended indefinitely. See, e.g., FTC v. Standard Oil ___ ____ ___ ____________ Co., 449 U.S. 232, 243 (1980) ("final agency action" status ___ designed to promote "administrative efficiency"). Petitioner's counterargument that Congress intended to defer judicial review until the revised SIP has been promulgated is untenable, since it misconstrues the plain language of the statute and misapprehends the equally clear intent of Congress. Cf. Garcia v. Cecos Int'l __ ______ ___________ Inc., 761 F.2d 76, 79 (1st Cir. 1985) (plain language of 42 ____ U.S.C. 6972(b), requiring sixty days' notice before commence- ment of "private citizen" suit is "not a technical wrinkle or superfluous formality that federal courts may waive at will . . . [but] part of the jurisdictional conferral from Congress that cannot be altered by the courts."). As the EPA points out, Congress well understood how to defer review had that been its intent. Indeed, it specifically provided for deferred judicial review of classifications of PM10 _______________ nonattainment areas until agency action has been taken on the SIP or any SIP revision. Compare 42 U.S.C. 7502(a)(1)(B) with  _______ ____ 7407(d)(2)(B); see also supra p.3. Thus, the absence of a ___ ____ _____ similar deferment for nonattainment designations affords confir- ____________ mation that these EPA actions were meant to be subject to immedi- ate review. We therefore conclude that the PM10 nonattainment designation for Guaynabo became a final agency action for purpos- es of judicial review upon its publication by EPA in the Federal _______ 7 Register as directed in the 1990 CAA amendments.1 Thus, the ________ petition for review is time-barred.  II II Petitioner next claims that it was "arbitrary and capricious" to approve the revised SIP issued by the EQB. Since the revised SIP comports with the statutory requirement for ensuring attainment of the NAAQS for PM10 in a moderate non- attainment area, this claim fails on the merits.  Congress has mandated various SIP criteria as prerequi- sites to EPA approval. See 42 U.S.C. 7410, 7513(a) and (b). ___ The CAA generally allows States considerable latitude in deter- mining how to meet these SIP criteria. See Train v. Natural ___ _____ _______ Resources Defense Council, Inc., 421 U.S. 60, 65, 79, 87 (1975). ________________________________ In the instant case, the revised SIP submitted by the Common- wealth won EPA approval following an agency review for complete- ness and a finding that it reasonably ensured PM10 attainment in Guaynabo.  Petitioner contends that the EPA failed to provide adequate responses to its objections to EPA's assessment of PM10 violations, its "modeling" of grain processing operations, and  ____________________ 1Petitioner's argument that the EPA "reopened" its non- attainment designation during the SIP revision process is without merit. Petitioner cannot revive its time-barred claim by solic- iting an EPA response to petitioner's comment challenging the designation, especially since the EPA in this case simply reiter- ated its original position. See, e.g., American Iron and Steel ___ ____ ________________________ Institute v. EPA, 886 F.2d 390, 398 (D.C. Cir. 1989) (permitting _________ ___ such bootstrapping would be contrary to congressional efforts to secure prompt and final review of agency decisions; petitioner cannot goad agency into replying, then claim agency "reopened" issue), cert. denied, 497 U.S. 1003 (1990). _____ ______ 8 the resulting RACT/RACM ("reasonably available control technolo- gy/reasonably available control measures") requirements. We do not agree.  9 In each instance the EPA presented reasoned explana- tions for approving the revised SIP notwithstanding petitioner's objections. See 60 Fed. Reg. 28,335-37. Moreover, petitioner's ___ criticisms, which go to the heart of the EPA's approval methodol- ogy, involve areas in which "EPA's `expertise is heavily impli- cated,' and we may not substitute our judgment for that of the Administrator." Mision Industrial, Inc. v. EPA, 547 F.2d 123, 129 _______________________ ___ (1st Cir. 1976) (citations omitted). Following a thorough review of the record, and careful consideration of petitioner's claims, we are not persuaded that petitioner has demonstrated "arbitrary and capricious" agency action which would warrant disturbing EPA's approval and promulgation of the revised SIP. See Citizens ___ ________ to Preserve Overton Park, Inc., 401 U.S. at 415. ______________________________ The petition for review is denied. The petition for review is denied. _________________________________ 10